

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1520 | **DATE** | 1/6/2004 |
| **CASE TITLE** | Wilson Sporting Goods Company vs. Nicklaus Golf Equipment Co. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]    ENTER MEMORANDUM OPINION: Defendants' motion to dismiss is granted. [7-1]

(11)  ■  [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 0 8 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 13 |
| X | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/7/2004 | |
| | | | date mailed notice | |
| AMM | courtroom deputy's initials | | AMM77 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK

'04 JAN -8 AM 3: 29

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WILSON SPORTING GOODS COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 03 C 1520 |
| | ) |
| NICKLAUS GOLF EQUIPMENT COMPANY, | ) |
| L.L.C, GOLDEN BEAR INTERNATIONAL, | ) |
| INC., and JACK NICKLAUS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Before the court is defendants' motion to dismiss pursuant to
Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) and the
Declaratory Judgment Act. For the reasons stated below, the motion
is granted.

## BACKGROUND

This declaratory judgment action arises out of a trademark
dispute over the use of the term "JACK" in association with a new
golf ball introduced by plaintiff Wilson Sporting Goods Company
("Wilson").

In October 2002, Robert P. Kelly, CEO of defendant Nicklaus
Golf Equipment Company, L.L.C. ("Nicklaus Golf"), sent a letter to
Jim Baugh, president of Wilson, indicating that Nicklaus Golf and
defendants Golden Bear International, Inc. and Jack Nicklaus
believed that Wilson's use of the term "JACK" in relation to a golf

ball was causing confusion in the marketplace because customers were incorrectly associating the ball with Jack Nicklaus and his related companies. (Wilson was also using the phrase "You don't know Jack" in its marketing.) Mr. Kelly stated that Nicklaus Golf had previously used the mark "JACK" in relation to golf clubs. The conclusion of the letter expressed defendants' hope to "amicably resolve" the matter and invited a proposal from Wilson. (Memorandum in Support of Motion to Dismiss, Ex. A, Letter from Robert P. Kelly to Jim Baugh, October 24, 2002.)

Discussions ensued. In December 2002, general counsel for Wilson sent Mr. Kelly a letter stating that "[i]t has surprised Wilson that [defendants], in effect, claim[] exclusive rights to use the '. . . you don't know Jack' colloquialism in the field of golf," but also stating a hope to resolve the dispute "short of litigation." (Memorandum in Support of Motion to Dismiss, Ex. B, Letter from Ray Berens to Robert P. Kelly, December 17, 2002.)

In February 2003, defendants' outside counsel, Scott A. McCollister, responded to Mr. Berens's letter. This letter was considerably more detailed than defendants' first letter to Wilson, and clarified that defendants were not so much concerned with Wilson's use of the phrase "You don't know Jack," but with Wilson's use of the simple mark "JACK." The letter also stated in part:

> Wilson's use of the mark JACK is targeted to the same customers courted by the Nicklaus organization. Thus, the Wilson JACK golf ball is likely to cause confusion, deception or mistake as to the source of

products.  In addition, the Wilson use of the JACK trademark dilutes the relative value of that mark to Nicklaus.  This constitutes, at a minimum, federal trademark infringement, deceptive trade practices, and unfair competition in violation of 15 U.S.C. § 1051 et seq. and various state laws.
. . .
We believe that the newly introduced Wilson JACK ball is [also] a violation of Jack Nicklaus' rights under common law and various statutes governing the right of publicity.
. . .
While injunctive relief is available, Wilson's violation of the Right of Publicity statute may also render Wilson liable for the greater of actual damages and/or profits derived from the unauthorized use of Jack's identity.  In addition, an entity who violates another's right of publicity may be liable for punitive damages.

In short, the Nicklaus business organization and Jack Nicklaus personally must insist that Wilson immediately cease and desist and end all use of the trademark JACK as indicia on any golf products. Accordingly, any further communications from Wilson on this matter need to address the trademark and right of publicity issues associated with the mark JACK, not the slogan ". . . you don't know Jack."

In summary, while we believe that the use of the phrase ". . . you don't know Jack" in association with golf products, may constitute copyright infringement and infringement of Mr. Nicklaus' right of publicity, in the spirit of compromise, we will not presently insist that Wilson abandon its use.  However, we must insist that Wilson cease the use of the singular name JACK as it appears on packaging, advertisements or products associated with golf equipment, including golf balls.

Quite frankly, in response to Mr. Kelly's letter, we hoped that Wilson would acknowledge its error in adopting the JACK trademark and work to develop an exit strategy from using the mark.  However, Nicklaus representatives at the 2003 PGA Show found what appears to be an escalating focus on JACK branded golf balls making the matter more important to the Nicklaus organizations and to Mr. Nicklaus personally.  In fact, Wilson seems intent on attempting to embarrass Mr. Nicklaus.  Its decision to place JACK branded advertisements over urinals with the phrase "nice package" is nothing short of offensive.

Please provide us with your intended course of action to alleviate our concerns by the end of February, 2003.

(Memorandum in Support of Motion, Ex. C, Letter from Scott A. McCollister to Raymond M. Berens ("McCollister Letter"), February 11, 2003.)

Wilson's outside counsel, Jeffery A. Key, responded in part as follows in a letter dated February 26, 2003:

> As an initial matter, I would like to reiterate that Wilson would like to resolve this matter without resort to litigation. To that end, perhaps we can discuss a means for mediating or arbitrating the trademark issues you have raised.
> It would be helpful . . . if you could supply us with documentation [of trademark registrations and uses.] . . .
> Accordingly, please contact the undersigned to discuss a means for resolving this dispute that would be expeditious and save our clients the great expense of protracted litigation.

(Memorandum in Support of Motion, Ex. D, Letter from Jeffery A. Key to Scott A. McCollister, February 26, 2003.)

Two days later, on February 28, 2003, Wilson filed the complaint in the instant action, seeking a declaratory judgment that Wilson has not infringed defendants' trademarks or violated other laws and that any trademark for the term "JACK" on golf balls is invalid. About a month and half later, on April 14, 2003, defendants filed a trademark infringement action against Wilson in the Southern District of Ohio.

Defendants now move to dismiss the complaint.

## DISCUSSION

Defendants contend that the complaint must be dismissed for lack of subject matter jurisdiction because there is no "actual controversy" here. Alternatively, defendants argue that should we find that we have subject matter jurisdiction, we should exercise our discretion to decline to hear this action.

### A.  Subject Matter Jurisdiction

When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a district court accepts as true all well-pled factual allegations and draws reasonable inferences from the allegations in favor of the plaintiff. See Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993). The court may also look beyond the allegations of the complaint and consider affidavits and other documentary evidence to determine whether subject matter jurisdiction exists. See id.

The Declaratory Judgment Act, 28 U.S.C. § 2201, allows federal courts to render declaratory judgments only when an "actual controversy" exists. See Crown Drug Co. v. Revlon, Inc., 703 F.2d 240, 243 (7th Cir. 1983). "[T]he question . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). "'The defendant must

have engaged in conduct giving rise to a reasonable apprehension on plaintiff's part that it will face . . . suit or the threat of one if it commences or continues the activity in question.'" Trippe Mfg. Co. v. American Power Conversion Corp., 46 F.3d 624, 627 (7th Cir. 1995) (quoting International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir. 1980)). "The focus of the inquiry must rest on the defendant's statements and conduct . . . ." Trippe, 46 F.3d at 627. Because the crucial date for determining whether a federal court has jurisdiction is the date the complaint was filed, see Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 734 n. 2 (Fed. Cir. 1988), we must confine our analysis to factual developments occurring before the filing of the complaint-- in this case, the communications from defendants to Wilson in the letters described supra.

Defendants assert that Wilson had no reasonable apprehension of being sued at the time it filed the complaint, relying on the fact that the exchange of letters referred to hopes of settling the dispute without resorting to litigation. We disagree with defendants. Although both of Wilson's letters expressed the desire to negotiate, only the initial letter from defendants did so. The second letter from defendants (the McCollister Letter) upped the ante: it explicitly accused Wilson of trademark infringement, deceptive trade practices, unfair competition, and violation of the right to publicity. "A reasonable apprehension of an infringement

suit may be based upon the defendant's assertion of exclusive rights against another party." G. Heileman Brewing Co. v. Anheuser-Busch, Inc., 873 F.2d 985, 990 (7th Cir. 1989).

Moreover, the McCollister Letter referred to the possibility of injunctive relief, damages and punitive damages, and it also demanded that Wilson "cease and desist" use of the mark JACK. The letter concluded with the description of Wilson's advertising as "offensive" to Mr. Nicklaus. There is no indication that defendants' position changed during the two-week period between the sending of the letter and Wilson's filing of the complaint. Given the content of the McCollister Letter, we believe that Wilson had a reasonable apprehension of being sued at the time it filed the complaint. We find, therefore, that we have subject matter jurisdiction.

**B.** **Discretion Regarding Declaratory Judgment Actions**

Defendants argue that even if we have subject matter jurisdiction, we should decline to exercise our jurisdiction under the Declaratory Judgment Act because the action was filed in anticipation of an infringement action.

In Tempco Electric Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 747 (7th Cir. 1987), the Seventh Circuit stated that "[i]t is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." In Tempco, the Court of Appeals held

that the district court did not err in declining to exercise its jurisdiction over a declaratory judgment action that was filed in anticipation of a trademark infringement action, noting in relevant part:

> Where, as here, the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later. . . . In [certain] circumstances, a federal court may grant a declaratory judgment to prevent one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit. However, [defendant] has not engaged in such conduct. It promptly [filed] suit to enforce its claim that Tempco had infringed its trademark. Thus, a declaratory judgment would serve no useful purpose and was properly denied. . . . [T]he mere fact that Tempco filed its declaratory judgment action first does not give it a "right" to choose a forum. This circuit has never adhered to a rigid "first to file" rule. . . . As we have noted before, "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum."

Id. at 749 (footnote omitted) (quoting American Auto. Ins. Co. v. Freundt, 103 F.2d 613, 617 (7th Cir. 1939)). Our colleagues in this district have applied Tempco to dismiss declaratory judgment actions where trademark infringement suits were filed promptly thereafter. See, e.g., Wireless Mktg. Corp. v. Cherokee Inc., No. 98 C 1406, 1998 WL 719944 (N.D. Ill. Oct. 6, 1998); Successories, Inc. v. Arnold Palmer Enters., Inc., 990 F. Supp. 1044 (N.D. Ill. 1998).

Wilson maintains that we should not apply Tempco because defendants filed the action in the Southern District of Ohio about

45 days after Wilson filed the instant action, and this does not constitute a "promptly" filed infringement action. We acknowledge that the case law cited by the parties applies Tempco to instances involving a lapse of anywhere from 2 to 12 days between the filing of the declaratory judgment action and the filing of the infringement action. Nonetheless, we do not read Tempco or the district court opinions as setting any particular time limit for an action to be considered "promptly" filed. Under the circumstances, we believe that defendants' infringement action was promptly filed.

Wilson also contends that Tempco does not apply because it will be expensive and inconvenient for Wilson to litigate the dispute in Ohio. This argument is not relevant to the principles of Tempco, though; it is a venue argument that should be addressed to the Ohio court. See Trippe, 46 F.3d at 629; Successories, 990 F. Supp. at 1047.

In sum, Tempco controls this case. Defendants' prompt filing of the Ohio trademark infringement action obviates the need for Wilson's declaratory judgment action. Accordingly, in our discretion, we decline to exercise jurisdiction.[1]

---

[1] Defendants also argued in their motion and briefs that the court has no personal jurisdiction over them, but we suggested that, at this juncture, the parties focus on the subject matter jurisdiction issues because Wilson requested discovery on the personal jurisdiction matter. In light of our ruling, it is not necessary to address defendants' personal jurisdiction arguments.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted.

DATE:           January 6, 2004

ENTER:

_____

John F. Grady, United States District Judge